447 So.2d 1139 (1984)
STATE of Louisiana
v.
Charles O. FAULKNER.
No. 83 KA 0772.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Writ Denied April 23, 1984.
*1141 William R. Alford, Asst. Dist. Atty., Covington, for appellee.
Charles O. Faulkner, in pro. per.
*1142 Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Defendant was found guilty of violating La.R.S. 14:30, murder in the first degree, by a twelve-man jury. The defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension.
Defendant's counsel alleged seven assignments of error and defendant, after enrolling as co-counsel, alleged an additional error. These are: 1) the denial of a motion to suppress, 2) the denial of a motion to bar death qualification voir dire questions, 3) the reopening of the voir dire of a juror already sworn and the subsequent disqualification of the juror for cause, 4) and 5) the admission of defendant's statements into evidence, 6) the state's failure to produce Brady material, 7) the admission into evidence of the photograph of a pair of gloves, and 8) the sufficiency of evidence.
On January 28, 1982, Steve Radosti, an unmarried older gentleman, was found dead in his home. He had been shot in the head, stabbed twice in the abdomen and had sustained bruises in the head and neck area. His home had been ransacked and many items were stolen, including his truck.
The defendant testified that he and a friend had been hitchhiking from Mississippi to New Orleans, when Mr. Radosti gave them a ride and offered to let them spend the night at his house. Defendant's friend killed Mr. Radosti at the victim's home. They loaded many of the victim's belongings into his truck and returned to Mississippi. The following day they burned the truck.
The defendant, accompanied by his father, turned himself in to the Sheriff's office in Meridian, Mississippi on February 1, 1982, and was initially arrested on other outstanding charges. He was taken to the Meridian police department the following day where he gave a statement regarding the murder, after waiving his rights.
Defendant first argues that the trial court erred in denying a motion to suppress evidence seized pursuant to a search warrant because the search warrant application was signed by a police officer who had no personal knowledge of the facts contained in the application.
An affidavit of a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), State v. Tesch, 431 So.2d 108 (La.App. 1st Cir.1983).
The informant was the chief of detectives and we find that his credibility is apparent from the face of the affidavit. See State v. Boksham, 370 So.2d 491 (La. 1979). The chief based his conclusions on the following: defendant's accomplice had admitted that he and the defendant got rid of a truck stolen from the victim, the accomplice stated that defendant had taken the victim's truck to the location to be searched, the chief had received a report from the Sheriff's office in Slidell that the victim had been murdered and specific items were stolen and items similar to those stolen from the victim had been seen by the chief when he arrested the accomplice on arson charges at the location to be searched.
The affidavit established probable cause and we find no error.
Defendant next argues that the denial of his motion to bar death qualification voir dire questions resulted in a jury composed of people who were biased in favor of conviction rather than a fair cross-section of the community.
There is no constitutional bar to the exclusion of jurors who state in advance of trial that they could not even consider returning a verdict of death or that their attitude about the death penalty would prevent them from making an impartial decision as to defendant's guilt. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); State v. Drew, 360 *1143 So.2d 500 (La.1978), cert. denied 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
The three jurors who were excused for cause based on their view of the death penalty, stated that they would not return a death penalty no matter what the circumstance. Furthermore, the defendant did not receive the death sentence and therefore has no valid Witherspoon complaint. State v. Edwards, 406 So.2d 1331 (La. 1981), cert. denied 456 U.S. 945, 102 S.Ct. 2001, 72 L.Ed.2d 467 (1982). We find no error.
Defendant next argues that the court erred in allowing the State to reopen voir dire of a juror and in granting a challenge for cause after the juror had been previously accepted by both parties and sworn as a juror.
The juror, after being sworn, stated that his initial answers concerning the death penalty, on voir dire, were incorrect and that he could not return the death penalty regardless of the factual circumstances. The juror was excused for cause.
A juror can be challenged for cause, after being accepted by the challenging party, when the ground was unknown to the challenging party prior to acceptance. La.C.Cr.P. art. 795; State v. Marshall, 410 So.2d 1116 (La.1982).
The trial judge properly excused the juror under La.C.Cr.P. art. 798(2). The State's use of all of its peremptory challenges does not affect the propriety of the challenge for cause in light of our finding that it was proper.
The defendant next argues that the trial court erred in allowing his statement to be introduced because one of the officers present could not identify the defendant in the courtroom, the statement was made under inducement, and it was tainted by a prior statement given by defendant prior to waiving his Miranda rights.
Although one of the officers who was present when the defendant gave his statement at the Meridian police station could not identify the defendant in the courtroom, the defendant was identified by another officer who was present. We find no error.
The deputy on duty when the defendant turned himself in did not give the defendant his Miranda rights and did not try to obtain a statement. When the defendant began discussing the murder, the deputy told the defendant he did not want to hear it. However, the defendant's father explained the defendant needed to talk and the defendant proceeded.
The following day at the Meridian police department, after reading and waiving his Miranda rights, the defendant made a signed statement in front of the sheriff's deputy he talked with the night before and a police officer.
On the night the defendant turned himself in, the sheriff's deputy, a family friend, told defendant and his father that he would try to assist in finding an attorney and told defendant to tell the truth. This was after defendant's father asked if he knew an attorney. The sheriff's deputy did later provide the defendant's father with an attorney's name.
The police officer stated that on the following day he could have told defendant that things would be easier if the defendant told the truth, but he did not tell the defendant he would help him in any way.
Defendant's father verified that his son gave a statement to the sheriff's deputy without being asked. He also stated that the sheriff's deputy told the defendant to tell the truth and that he would try to help. However, the deputy did not identify in what manner he could help.
Confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, are involuntary and inadmissible as a matter of constitutional law. The state must prove beyond a reasonable doubt that the statement was made freely and voluntarily and not under the influence of inducements or promise. La.R.S. 15:451, La.C.Cr.P. art. 703, State v. Jackson, 414 So.2d 310 (La. 1982).
*1144 We find that the vague promises to help are insufficient to negate the voluntary nature of defendant's statements in light of his clear understanding of his Miranda rights and the trial judge's discretion. See State v. Hernandez, 432 So.2d 350 (La.App. 1st Cir.1983).
We also find that the statement by defendant on the night he turned himself in was spontaneous and voluntary and not given as a result of police interrogation or compelling influence. It is admissible in evidence without Miranda warnings even though the defendant was in custody. State v. Lane, 414 So.2d 1223 (La.1982). There was no evidence of interrogation and the deputy even tried to prohibit the conversation.
Since these statements were not obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), they do not taint defendant's subsequent confession.
Defendant next argues that the court erred in allowing into evidence a statement made by defendant regarding the burning of the victim's truck in Mississippi, in that the surprise testimony resulted in unwarranted prejudice. Defendant further argues that the statement was evidence of "other crimes."
The statement in question was first made known to the State and the defendant during the course of the trial. It had been taken at the same time as the statement concerning the murder, but was transcribed separately. The trial judge admitted the statement, noting that it was made available to the state and defendant at the same time, and that defendant's statement concerning the murder mentioned that the defendant burned the victim's truck,[1] the subject of the statement in question.
Although the state's failure to comply with discovery procedures will not automatically demand a reversal, if the defendant is prejudiced by the failure to disclose, he is entitled to a reversal. State v. Mitchell, 412 So.2d 1042 (La.1982). We agree with the trial court's reasoning and find no undue surprise or prejudice, particularly since the admission of the burning of the truck was also contained in the statement regarding the murder.
Other crimes evidence is normally inadmissible because of the prejudicial effect upon the accused's constitutional presumption of innocence. State v. Morris, 362 So.2d 1379, (La.1978). However, we find no abuse of discretion, since in light of the record as a whole we cannot say that knowledge that the victim's truck was burned would so enflame the jury that it would unjustifiably convict the defendant of murder. See State v. Montgomery, 432 So.2d 340 (La.App. 1st Cir.1983); State v. Vernon, 385 So.2d 200 (La.1980).
Defendant next argues that the trial court erred in denying his motion for a mistrial based on the State's failure to furnish Brady material. Defendant argues that the state gave notice of evidence indicating that the defendant and his accomplice called a friend who came and picked them up, that the friend tried some "stuff", and that they stole his truck when he went to sleep. The state also gave notice that the defendant told other friends not to say anything about the gun.[2]
At trial the state's witness testified that defendant did not know the victim as a friend, but instead rode with the victim when he was unable to reach a friend by phone. He also testified that defendant had stated, "do not get rid of the gun," and that the prosecution was aware of the inconsistencies prior to his testimony.
The trial court ordered the state to allow defendant to see its notes and denied a mistrial, finding substantial compliance with the continuing obligation to furnish *1145 Brady material, if any was involved in the inconsistencies.
The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good or bad faith of the prosecution. The test for materiality is whether the omitted evidence creates a reasonable doubt that would not otherwise exist. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Hicks, 395 So.2d 790 (La.1981).
We find that any nondisclosure did not deprive defendant of a fair trial and was not material to the guilt or punishment of the defendant.
Defendant next argues that the admission into evidence of a picture of a pair of gloves in the victim's residence prejudiced his right to a fair trial since they were unconnected, extraneous and irrelevant evidence. The defendant's statement and his testimony indicated that he wore gloves while he loaded the victim's belongings into the truck. While the gloves were never identified as the ones that defendant used, we find that the error, if any, is harmless.
Defendant's last argument relates to the sufficiency of evidence to prove murder in the first degree.
To show the specific intent required for first-degree murder the state had to prove that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10. Specific intent, however, may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Holmes, 388 So.2d 722 (La.1980). The test of the sufficiency of circumstantial evidence is that the circumstantial evidence presented at trial, assuming every fact to be proved that the evidence tends to prove, must exclude every reasonable hypothesis of innocence. State v. Shapiro, 431 So.2d 372 (La.1983).
There is no doubt that defendant was at the victim's house when he was killed and that he participated in the removal of the victim's belongings from his house.
Other evidence indicated that the phone lines had been cut or broken, that the decedent was found with a pillowcase twisted around his neck, and a towel wrapped through and around his arms, and that blood trailed throughout the house. The defendant further testified that he went along with his accomplice's story that they "shot the victim, buried him alongside the road and took his truck." He also testified that the victim did not use a crutch, although one was found near the body and the victim's neighbor stated that the victim was using crutches the evening before the murder.
The evidence further indicated that the defendant never tried to leave the scene of the crime or prevent any of the criminal activity.
We find, after assuming every fact to be proved that the evidence tends to prove, that every reasonable hypothesis of defendant's innocence is excluded, that the defendant actively desired the criminal consequences and that he was concerned in or aided and abetted in the murder.
For these reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] While the defendant's counsel objected to the murder statement as evidence of "other crimes", no such objection was made on appeal.
[2] This was the information contained in the prosecution's notes, except the notes stated that the defendant told friends not to say anything and not to get rid of the gun.